UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-61644-CIV-SINGHAL

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MJ CAPITAL FUNDING, LLC,
MJ TAXES AND MORE, INC., and
JOHANNA M. GARCIA,

    Defendants.
_____/

**RECEIVER'S FIRST INTERIM APPLICATION TO AUTHORIZE PAYMENT OF FEES AND EXPENSES OF RECEIVER AND HER PROFESSIONALS**

Corali Lopez-Castro, as Receiver ("Receiver") over MJ Capital Funding, LLC ("MJ Capital") and MJ Taxes and More Inc. ("MJ Taxes") (collectively, the "Receivership Defendants")[1], files this First Interim Application to Authorize Payment of Fees and Expenses incurred by Receiver and her Professionals from August 12, 2021 through October 31, 2021 (the "Application Period").[2]

---

[1] The receivership has been expanded to include, and the receiver has been appointed over, Pavel Ruiz MJCF LLC and UDM Remodeling, LLC pursuant to the Order Granting Receiver's Motion to Expand Receivership Estate [D.E. 79], which order is presently subject to a pending motion to vacate [D.E. 83].

[2] The Receiver seeks (1) authorization to immediately pay all fees and expenses less a hold-back of 20% (as to fees); and (2) authorization to pay the 20% hold-back upon final distribution of Receivership assets to investors.

## Background

On August 9, 2021, the Securities and Exchange Commission ("S.E.C.") initiated this action against Johanna M. Garcia and the Receivership Defendants. [D.E. 1]. The S.E.C.'s Complaint alleges that Johanna M. Garcia used the Receivership Defendants to perpetrate a Ponzi scheme by which investors were tricked into thinking they were funding Merchant Cash Advance ("MCA") loans to small businesses when in reality their "returns" have been funded with money obtained from new investors.

The S.E.C. requested the immediate appointment of a Receiver to exercise full and exclusive power, duty and authority to administer and manage the business affairs, funds, assets, causes in action and any other property of the Receivership Defendants; marshal and safeguard all of their assets, and "take whatever actions are necessary for the protection of the investors." [D.E. 17].

## The Receivership

On August 12, 2021, this Court appointed Corali Lopez-Castro as the Receiver over MJ Capital and MJ Taxes ("Receivership Order"). [D.E. 17] The Receivership Order directs the Receiver to take exclusive jurisdiction and possession of all assets of the Receivership Defendants, exercise all powers of the officers, directors, managers, and general and limited partners of the Receivership Defendants, and marshal and preserve assets of the Receivership Defendants and attributable to funds derived from investors of the Receivership Defendants, among other things. Since being appointed, the Receiver has been engaged in the process of identifying, securing and recovering the receivership assets and investigating the Receivership Defendants' operations and financial affairs.

From the Receiver's preliminary investigation, it appears that at least 5,500 investors were induced by Johanna Garcia and over 400 promoters to invest as much as $200,000,000 in this Ponzi scheme. The Receiver has focused on securing and recovering assets of the Receivership Defendants in order to provide a source of repayment for these defrauded investors. In addition to recovering cash, accounts, and other assets of the Receivership Defendants, the Receiver has recovered money and other assets from several individuals involved in promoting these investments. Though several individuals have agreed to return funds and other assets to the Receiver, many others have not, and several continue to mislead the victims by counseling them not to register their claims on the Receiver's website and advising them that the Receivership Defendants' business will reopen and that is how they will be repaid.

Pursuant to court orders, the Receiver hired the law firm of Kozyak Tropin & Throckmorton, LLP to represent her in the performance of her duties [D.E. 35], the forensic accounting firm of KapilaMukamal, LLP to review, reconstruct and analyze the Receivership Defendants' financial records and provide additional accounting services [D.E. 35], HD Investigative Group LLC as investigators to help identify assets and causes of action of the Receivership Defendants [D.E. 49], and Martin Claire & Co. LLC to auction the personal property located at the Receivership Defendants' business premises. [D.E. 64].[3] The Receiver, her counsel and accountants have agreed to substantial discounts from their usual hourly rates in connection with this engagement. The Receiver and her counsel are billing at hourly rates of $150-$350, compared to usual hourly rates of $250-$700, and her accountants are billing at hourly rates of $170-$350, compared to usual hourly rates of $170-$690.

---

[3] The auctioneer's compensation was already addressed in the Order approving their retention and is not the subject of this application.

**Summary of Services Rendered by the Receiver and
Her Professionals During the Application Period**

In fulfilling her duties pursuant to the Receivership Order, the Receiver and her professionals have provided services as summarized below and separated their time into the activity categories provided in the Billing Instructions. A more detailed description of the services rendered is included in the time records attached hereto as Exhibits B through E.

**CASE ADMINISTRATION**

This category primarily involves the actions of the Receiver and her professionals immediately upon taking possession and control of the Receivership Defendants' business operations, as well as ongoing, frequent, and extensive communications with investors to answer questions and apprise them of the status of the receivership. The services rendered were as follows:

- The Receivership Order directs that all Receivership Assets and Recoverable Assets (as defined in the Receivership Order) are frozen until further order of the Court. Upon its entry, the Order was promptly served on financial institutions which were known or expected to be holding Receivership Assets or Recoverable Assets. Pursuant to the freeze order, $6,459,913.39 and $200,000 were frozen at the Receivership Defendants' accounts at JP Morgan Chase Bank, and $10,500 and $7,618.69 were frozen at their accounts at Wells Fargo Bank. In addition, approximately $3.4 million in accounts of related persons and entities have been frozen at various banks.

- The Receiver has completed mail forwarding instructions for all the Receivership Defendants' Pompano Beach locations to ensure that any mail sent to the Receivership Defendants is directed to the Receiver.

- The Receiver and her personnel have responded to inquiries from investors through nearly a thousand telephone calls, emails and in person meetings with investors since her appointment. The Receiver has designated at least four people at her office to respond to telephone calls and emails. The Receiver has established a dedicated email address which is the best way for investors to submit inquiries regarding the case: MJCapital@kttlaw.com.

- The Receiver moved for and obtained an order directing that control of the websites, social media accounts and software accounts used by the Receivership Defendants be turned over to the Receiver. The Receiver has obtained control over the website previously used by MJ Capital and has redirected it to the website maintained by the Receiver, https://kttlaw.com/mjcapital, which is used to provide information and updates to investors, including pertinent information related to the Receivership, important dates and deadlines, and Court filings. The website also contains a list of "Frequently Asked Questions" and answers, which are updated as the Receiver and her personnel continue to field inquiries from investors. The Receiver has also obtained a "data pull" of accounting data from MJ Capital's account with Right Networks, LLC, and has restricted other access to the account.

- The Receiver searched the Florida Department of State's "Sunbiz.org" site for the Receivership Defendants and discovered that MJ Taxes was acting as the registered agent for over two hundred (200) corporations and limited liability companies. Pursuant to Fla. Stat. 617.0502(2), the Receiver has filed statements of resignations with the Florida Department of State for each company and sent notices of the withdrawal to the companies' principal offices.

- The Receiver prepared and filed her Quarterly Status Report in compliance with the Receivership Order.

**ASSET ANALYSIS AND RECOVERY**

The Receiver and her professionals have undertaken an extensive review of all available materials, whether obtained from the business premises or obtained from third parties, including both hard-copy documents as well as electronic information and communications. The Receiver has also conducted interviews with several individuals involved in the operation of the Receivership Defendants, investors, and persons or entities identified as merchant cash advance customers in the limited set of merchant cash advance agreements that were found at the Receivership Defendants' business premises and other services rendered as discussed below.

- The Receiver changed the locks to all of the Receivership Defendants' business premises in Pompano Beach, Florida, secured all records, documents, computer equipment and other items on site, secured and inventoried cash and other assets found on site, and inventoried all personal property. The Receiver secured and recovered $1,378,689 in cash from various offices at the Pompano Beach premises. In addition, the Receiver discovered, inspected and secured an offsite storage facility located close to the Pompano offices and at Iron Mountain, and investigated office space used by the Receivership Defendants located at Doral, Florida. Finally, other offices that were to be opened by the Relief Defendants as they sought to expand their reach were searched for assets and records.

- Since securing the premises, the Receiver and her professionals have been engaged in the process of reviewing books, records, and other materials located therein, including over ninety (90) bankers' boxes of documents, of which sixty-five (65) boxes contained investor agreements.

- The Receiver has also obtained and reviewed banking records from financial institutions where the Receivership Defendants maintained accounts. In addition, the Receiver

has issued subpoenas to financial institutions, and obtained additional records for accounts of related entities which received Receivership Assets and/or Recoverable Assets.

- Pursuant to her authority under the Receivership Order, the Receiver requested turnover of all files from attorneys who provided services to the Receivership Defendants. The Receiver has received turnover of files from Joel Mayersohn, Esq., Daniel DeSouza, Esq., James D'Loughy, Esq., and Rolando Casias, Esq. There are other attorneys from whom the Receiver continues to seek turnover of files.

- The Receiver discussed depositions of potential witnesses with the S.E.C. and coordinated, prepared for and attended the depositions of key witnesses.

- The Receiver filed a motion to expand the receivership to include Pavel Ruiz MJCF LLC and UDM Remodeling, LLC (the "Pavel Companies") [DE 67]. The motion was based on substantial evidence that the Pavel Companies, which were formed by Pavel Ruiz, a Board Member and "Director" within MJ Capital, were used as instrumentalities of the fraud to raise and receive substantial investor funds, and sought to treat the Pavel Companies as receivership entities, and their assets, and any assets acquired with investor funds, as Receivership Assets under applicable legal standards. The Court entered an Order Granting Receiver's Motion to Expand Receivership Estate [DE 79] determining that expansion of the Receivership to include the Pavel Companies is necessary to effectively safeguard assets for the benefit of investors and to guard against potential dissipation. The Pavel Companies subsequently filed a Motion to Vacate the Court's Order, which has not yet been addressed by the Court.

- The Receiver, through her investigation of and interviews with individuals and entities involved in promoting the Receivership Defendants, has recovered $1,832,728.35 in

7

funds turned over by various parties. In addition to the funds turned over, the Receiver, through her securing of the Receivership Defendants' business premises and her investigation of related entities and individuals, has recovered or received turnover of and currently holds the following additional items:

| |
|---|
| 14 One Oz. Gold Bars |
| Gold Chain |
| Rolex Watch |
| Michelle Watch |
| Gucci Watch |
| Gucci Backpack |
| Louis Vuitton Purse |
| Louis Vuitton Bag |
| Christian Dior Purse |
| Gold Rolex Watch |
| Gold & Steel Rolex Watch |
| 3 T-Mobile SIM Cards |
| 3 Pre-Paid Visa Cards |
| Hand & Stone Gift Card |
| $100 Visa Gift Card |
| $50 Starbucks Gift Card |

- The Receiver continues to work with counsel to investigate all potential avenues of recovery for the benefit of investors, including from promoters who received investor funds.

**ASSET DISPOSITION**

- The Receiver engaged an auctioneer, arranged the inspection and appraisal of the Receivership Defendants' personal property, prepared and filed a motion to approve auction sale, and expedited the timing of the auction sale of the Receivership Defendants' personal property in order to turn over the leased business premises to the landlord.

- On September 28, 2021, the Receiver conducted an auction sale of the personal property located at the various premises of the Receivership Defendants in Pompano Beach,

using Martin Claire & Co., LLC as auctioneers. The auctioneer's fees and costs were paid from the gross proceeds of the sale pursuant to Court Order. The auction resulted in net sale proceeds to the Receivership Estate, after payment of the auctioneer's expenses, of $80,519.25.

**BUSINESS OPERATIONS**

This category covers primarily issues relating to the leases with Bilu Realty for the various premises occupied by the Receivership Defendants.

- The Receiver had several communications with the landlord's counsel relating to turnover of the security deposits and vacating the Pompano Beach business premises to the landlord upon liquidation of the Receivership Defendants' personal property, and claimed damages to the premises.

- The Receiver reviewed and analyzed lease issues relating to rents on the business premises and worked on a proposal to amicably resolve issues with the landlord.

**EMPLOYMENT APPLICATIONS**

The Receivership Order authorizes the Receiver to retain professionals to assist her in carrying out her duties and responsibilities. The Receiver prepared and filed retention applications of the Kozyak Tropin & Throckmorton, LLP firm as counsel, KapilaMukamal, LLP as forensic accountants, and HD Investigative Group, LLC as investigators, as approved by this Court. The Receiver and her professionals are not billing for the time spent in preparing fee applications.

**LITIGATION – S.E.C. ACTION**

- After her appointment, the Receiver engaged in discussions with the S.E.C. to address the Receiver's claims against MJ Capital and MJ Taxes, and consented to judgments against the Receivership Defendants permanently enjoining them from further violations of

Section 10(b) of the Securities Exchange Act of 1934 and Exchange Act Rule 10b-5, Section 17(a) of the Securities Act of 1933, and Section 5 of the Securities Act. [D.E. 65, 66]. Ms. Garcia has filed an Answer opposing the relief sought in the Complaint, and as a result the S.E.C.'s action continues to proceed against Ms. Garcia. Pursuant to the Court's Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge [D.E. 77], the parties agreed to appear for mediation on February 28, 2022, and the Court entered an Order scheduling mediation for such date.

### KapilaMukamal LLP

KapilaMukamal, LLP's work primarily involved review, analysis and reconstruction of the bank account records, financial records, and other related documents of the Receivership Defendants and related entities in order to assist the Receiver in identifying potential assets for recovery and understanding and reconstructing the Receivership Defendants' financial transactions; and reviewing and compiling investor subscription packages and agreements in order to identify investors and quantify their investments.

KapilaMukamal has also assisted the Receiver in preparing certain required tax forms and filings for the Receivership Defendants.

### HD Investigative Group, LLC

HD Investigative Group, LLC has assisted the Receiver in performing certain investigative work to assist in the Receiver's efforts to identify and secure assets, and in obtaining service of subpoenas for discovery from certain individuals.

### Status of the Receivership Accounting

As of October 31, 2021, the Receivership Estate has cash on hand in the amount of $2,865,222.51, which the Receiver is holding in the Receiver's trust accounts at IberiaBank and

City National Bank. This amount does not include the funds frozen in Receivership Defendants' accounts at Chase Bank and Wells Fargo Bank. At the time of the banks' responses to the freeze order, $6,459,913.39 and $200,000 were frozen in the Receivership Defendants' accounts at Chase Bank, and $10,500 and $7,618.69 frozen at their accounts at Wells Fargo Bank. These funds were transferred to the Receiver's accounts in November 2021. Additional funds totaling $983,2323.00 were deposited into MJ Capital's account with Chase Bank following its response to the freeze order, which funds have been transferred to the Receiver's account in November 2021. The SEC's Standardized Fund Accounting Report (the "SFAR") for the Application Period is attached hereto as **Exhibit A.** As of the date of filing this Application, the Receivership Estate has cash on hand of $10,918,751.59, of which the Receiver estimates that approximately $1,000,000 consists of funds deposited into MJ Capital's account with Chase Bank on and after August 12, 2021.

### Request for Fees and Expenses

At Paragraph 53, the Receivership Order provides for reasonable compensation and expense reimbursement to be paid to the Receiver and her retained professionals from the assets held by the Receivership Estate.

On August 26, 2021 and September 8, 2021, this Court entered Orders authorizing the Receiver to employ (i) Kozyak Tropin & Throckmorton, LLP as counsel, (ii) KapilaMukamal, LLP as forensic accountants, and (iii) HD Investigative Group, LLC as investigators, all retroactive to August 12, 2021, respectively [D.E. 35, 49].

By this Application, the Receiver is proposing that this Court approve all of the fees and expenses incurred by the Receiver and each of her professionals during the Application Period, and authorize the distribution for payment of 100% of such expenses and 80% of such fees (with

a holdback of 20% of the fees). This is the Receiver's first request for approval of compensation and reimbursement of expenses incurred by the Receiver and each of her professionals.

The Receiver proposes that the awarded fees and expenses be paid from the funds currently held in the Receiver's accounts.

As reflected in the attached invoices, the total amount of fees and expenses incurred by the Receiver and each of her professionals[4] during the Application Period (August 12, 2021 through October 31, 2021) is as follows:

a. The Receiver: The total amount of fees incurred was $65,800.00 (which total includes fees in the amount of $65,800.00 and no expenses. *See* detailed time entries attached as **Exhibit B** hereto.

b. Kozyak Tropin & Throckmorton, LLP: The total amount of fees and expenses incurred was $325,118.24 (which total includes fees in the amount of $308,530.00 and expenses in the amount of $16,588.24). *See* **Exhibit C** hereto.

c. KapilaMukamal, LLP: The total amount of fees and expenses incurred were $255,383.16 (which total includes fees in the amount of $254,279.00 and expenses in the amount of $1,104.16). *See* **Exhibit D** hereto.

d. HD Investigative Group, LLP: The total amount of fees incurred were $2,475.00 (which includes fees in the amount of $2,475.00 and no expenses). *See* **Exhibit E** hereto.

---

[4] As required by the SEC's Billing Agreement, the Fee Schedule reflecting the names and hourly rates of all of the Receiver's professionals and paraprofessionals are fully set forth in each firm's respective invoices attached hereto as Exhibits B, C and D. Kozyak Tropin & Throckmorton, LLP has a core group of attorneys primarily responsible for most matters involved in this case, but in certain instances has brought in other attorneys – particularly associates at lower billable rates – to work on discrete tasks where appropriate.

In the case of the Receiver, Kozyak Tropin & Throckmorton, LLP, and KapilaMukamal, LLP, the foregoing totals reflect time charged at reduced hourly rates in accordance with the agreement between the Receiver and the S.E.C. Specifically, for purposes of this representation, the foregoing firms reduced their partner attorney rates from $675-$700 per hour to $350 per hour, and their associate attorney rates from $450-$550 per hour to $250-$300 per hour.

The services rendered during the Application Period are reflected and described in the attached Exhibits, and the professionals have separated their time into specific Activity Categories as directed by the S.E.C.'s Receivership Billing Instructions.

## Memorandum of Law

The Receiver and her professionals are entitled to reasonable compensation and expenses pursuant to the Receivership Order. A receiver appointed by a court who reasonably and diligently discharges her duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation.") A receiver and her lawyers are "also entitled to be reimbursed for the actual and necessary expenses they incurred in the performance of their duties." *Fed. Trade Comm'n v. Direct Benefits Grp.,* LLC, Case NO. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013).

Receivership courts have traditionally determined reasonableness of compensation by using the "lodestar" approach, calculating a reasonably hourly rate in the relevant market and the reasonable number of hours expended. *See, e.g., SEC v. Aquacell Batteries, Inc.*, Case No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan. 31, 2008); *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). The hourly rates billed by the

Receiver and her professionals are reasonable for professionals practicing in the Southern District of Florida, particularly in light of the reduced hourly rates described above, and the services reflected in the attached exhibits were reasonably necessary to the Receiver's performance of her duties as set forth in the Receivership Order.

### CERTIFICATION OF CONFERENCE

*The Receiver has discussed the relief requested herein with the S.E.C. and is authorized to represent to this Court that, after reviewing the time records and other materials submitted herewith, the S.E.C. does not oppose the relief sought in this Application.*

WHEREFORE, Corali Lopez-Castro, as Receiver, respectfully requests that the Court enter an Order:[5]

(a) approving the total amount of fees and expenses for the Application Period of: the Receiver in the amount of $65,800.00 in fees; Kozyak, Tropin & Throckmorton, LLP in the amount of $308,530.00 in fees and $16,588.24 in expenses; KapilaMukamal, LLP in the amount of $254,279.00 in fees and $1,104.16 in expenses; and HD Investigative Group, LLC in the amount of $2,475.00 in fees;

(b) authorizing payment of 80% of the approved fees and 100% of the approved expenses from the assets held by the Receivership Estate, as set forth herein; and

(c) authorizing payment of the remaining balance of the approved fees (*i.e.*, the 20% holdback) upon final distribution of Receivership assets to investors.

Dated: January 13, 2022

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134

---

[5] A copy of a proposed order granting the Receiver's First Interim Application for Order Authorizing Payment of Fees and Expenses is attached hereto as **Exhibit F**.

Tel: (305) 372-1800/Fax: (305) 372-3508
Email: bwidlanski@kttlaw.com
Email: blee@kttlaw.com

By: /s/ *Bernice C. Lee*
    Benjamin J. Widlanski
    Florida Bar No. 1010644
    Bernice C. Lee
    Florida Bar No. 0073535
    *Counsel for Corali Lopez-Castro, Receiver*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via electronic mail upon all counsel of record on this 13th day of January, 2022.

By: /s/ *Bernice C. Lee*
    Bernice C. Lee

## **CERTIFICATION**

The undersigned certifies that:

(a) I have read this application ("Application");

(b) to the best of my knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions;

(c) all fees contained in the Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

(d) I have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission);

(e) in seeking reimbursement for a service which I justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), I request reimbursement only for the amount billed to me by the third party vendor and paid by me to such vendor. To the extent that such services were performed by me as Receiver, I certify that I am not making a profit as Receiver on such reimbursable service.

(f) With the exception of the Billing Instructions, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estates, or any sharing thereof.

Respectfully submitted and certified,

*s/ Corali Lopez-Castro*
Corali Lopez-Castro, as Receiver


Respectfully submitted this 13th day of January 2022.