UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-61644-CIV-SINGHAL

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MJ CAPITAL FUNDING, LLC,
MJ TAXES AND MORE, INC., and
JOHANNA M. GARCIA,

    Defendants.
_____/

**RECEIVER'S THIRD INTERIM APPLICATION TO AUTHORIZE PAYMENT
OF FEES AND EXPENSES OF RECEIVER AND HER PROFESSIONALS**

Corali Lopez-Castro, as Receiver ("Receiver") over MJ Capital Funding, LLC ("MJ Capital"), MJ Taxes and More Inc. ("MJ Taxes"), Pavel Ruiz MJCF LLC, and UDM Remodeling, LLC (each a "Receivership Entity" and collectively, the "Receivership Entities"), files this Third Interim Application to Authorize Payment of Fees and Expenses incurred by Receiver and Her Professionals (the "Third Application") from January 1, 2022 through March 31, 2022 (the "Application Period").[1]

**Services Rendered and Results Achieved During the Application Period**

**I.   Introduction**

During the Application Period, the Receiver and her professionals recovered $1,093,670.22 from individuals and companies who were involved with, and received substantial

---

[1] The Receiver seeks (1) authorization to immediately pay 80% of fees and 100% of expenses, with a 20% hold-back as to fees, except with respect to HD Investigative Group LLC for which the Receiver seeks authorization to immediately pay 100% of fees and 100% of expenses, including the 20% holdbacks from prior fee awards; and (2) authorization to pay all 20% hold-back upon final distribution of Receivership assets to investors.

funds from, the MJ Defendants. In addition, the Receiver and her professionals prepared a detailed preliminary bank reconstruction for accounts of, and reviewed funds received by, Johanna M. Garcia ("Ms. Garcia") and a related company, MJ Enterprise Inc. ("MJ Enterprise"). Ms. Garcia and MJ Enterprise agreed to turnover all funds frozen in their three bank accounts with JPMorgan Chase Bank, N.A. ("Chase"), which totaled $2,591,200.62 as of February 23, 2022.  On March 8, 2022, the Receiver filed a motion for turnover of these funds, which was agreed to by Ms. Garcia and MJ Enterprises.  This motion is presently pending before the Court and upon entry of an Order, the Receiver will coordinate the transfer of the funds to the Receiver's account.

In addition to the foregoing funds, the Receiver previously located and secured the following funds: (a) $1,378,724.69 from the MJ Capital and MJ Taxes' (together, the "MJ Defendants") offices in Pompano Beach, (b) $7,443,236.39 that was frozen in MJ Capital's account with Chase,[2] (c) $200,000 that was frozen in MJ Taxes' account with Chase, (d) $715,660.67 surrendered from related individuals and companies during the period covered by the Receiver's First Interim Report  [DE 94], and (e) $1,117,067.68 surrendered from related individuals and companies during the period covered by the Second Interim Report [DE 109].

During the Application Period, the Receiver and her professionals have devoted a significant amount of time: (a) obtaining the surrender of assets from related individuals and companies who received substantial funds from the MJ Defendants, (b) identifying additional targets who received substantial funds from the MJ Defendants and serving subpoenas on such targets, (c) investigating transactions between the Receivership Entities and related individuals and companies, (d) reviewing documents relating to the Receivership Entities' operations and

---

[2] The Receiver estimates that $1,056,065 of the funds in MJ Capital's Chase account were deposited on and after August 12, 2021, the date the Receivership Order was entered.

2

financial affairs, (e) obtaining records relating to the Receivership Entities and related individuals and companies from financial institutions, (f) communicating with investors, and (g) formulating a formal claims submission and administration procedures. The Receiver and her professionals are continuing their efforts to locate and obtain the surrender of assets from individuals and companies on a voluntary basis in order to obtain recoveries for the benefit of the receivership estate in an efficient and cost-effective manner. For those who do not voluntarily surrender assets, however, the Receiver will pursue other avenues to recover assets, including bringing litigation before the Court.

## II. The Receivership and Ongoing Investigation

On August 9, 2021, the Securities and Exchange Commission ("SEC") initiated this action against Ms. Garcia, and the MJ Defendants [DE 1]. On March 21, 2022, the SEC filed an Amended Complaint for Injunctive and Other Relief and Demand for Jury Trial [DE 130]. The SEC's Amended Complaint alleges that Ms. Garcia used the MJ Defendants to perpetrate a Ponzi scheme by which investors were tricked into thinking they were funding Merchant Cash Advance ("MCA") loans to small businesses when in reality their "returns" have been funded with money obtained from new investors.

On August 12, 2021, this Court appointed Corali Lopez-Castro as the Receiver over the MJ Defendants ("Receivership Order") [DE 17]. On October 14, 2021, the Court entered the Order Granting Receiver's Motion to Expand Receivership Estate (the "Expansion Order") [DE 79] expanding the receivership to include the two companies, Pavel Ruiz MJCF LLC and UDM Remodeling, LLC, and on March 21, 2022, the Court entered an Order denying a motion to vacate the Expansion Order [DE 129]. The Receivership Order and Expansion Order direct the Receiver to take exclusive jurisdiction and possession of all assets of the Receivership Entities,

exercise all powers of the officers, directors, managers, and general and limited partners of the Receivership Entities, and marshal and preserve assets of the Receivership Entities and attributable to funds derived from investors of the Receivership Entities, among other things.

Based on the Receiver and her professionals' investigations, which are ongoing, the Receiver estimates that Ms. Garcia and over 400 promoters induced at least 5,500 investors to invest in the MJ Capital Ponzi scheme. While the Receiver and forensic accountants' review is ongoing, the Receiver estimates that the promoters induced investors to invest $200,000,000 in the MJ Capital Ponzi scheme, with investor funds being provided to the Receivership Entities, Ms. Garcia, Pavel Ruiz, and other related companies. These funds were primarily used to pay alleged "returns" to investors, and "commission" and "referral fees" to promoters, and otherwise personally benefit the Receivership Entities' insiders and promoters. The Receiver and her personnel have spoken to hundreds of these victims, many of whom poured their life savings into the MJ Capital Ponzi scheme.

### III. The Receiver's Professionals

Pursuant to court orders, the Receiver hired: (a) the law firm of Kozyak Tropin & Throckmorton, LLP to represent her in the performance of her duties [DE 35], (b) the forensic accounting firm of KapilaMukamal, LLP to review, reconstruct, and analyze the Receivership Entities' financial records and provide additional accounting services [DE 35], (c) HD Investigative Group LLC as investigators to help identify assets and causes of action of the Receivership Entities [DE 49], (d) Martin Claire & Co. LLC to auction the personal property located at the MJ Defendants' business premises [DE 64],[3] and (e) Stretto, Inc. as a consultant and service provider to assist with the claims process [DE 117]. In addition, on March 17, 2022,

---

[3] The auctioneer's compensation was already addressed in the Order approving their retention and is not the subject of this application.

with respect to Martin Claire & Co. LLC, the Receiver filed a Motion to Expand Employment of Auctioneer and Auction Sale of Vehicles and Surrendered Personal Property [DE 124], which is presently pending before the Court.

The Receiver, her counsel and accountants have agreed to substantial discounts from their usual hourly rates in connection with this engagement. The Receiver and her counsel are billing at hourly rates of $150-$350, compared to usual hourly rates of $250-$800, and her accountants are billing at hourly rates of $170-$350, compared to usual hourly rates of $170-$690. Stretto, Inc. has also agreed to discount their hourly rates.

**Summary of Services Rendered by the Receiver and Her Counsel
During the Application Period by Activity Code**

In fulfilling her duties pursuant to the Receivership Order, the Receiver and her professionals have provided services as summarized below and separated their time into the activity categories provided in the Billing Instructions. A more detailed description of the services rendered is included in the time records attached hereto as Exhibits B through F.

**I. Case Administration**

This category primarily involves the actions of the Receiver and her professionals to obtain and review books and records of, and relating to, the Receivership Entities' business operations and assets. In addition, the Receiver and her professionals have made frequent and extensive communications with investors to answer questions and apprise them of the status of the receivership a priority. The services rendered include:

- The Receiver has continued to collect confirmation information for investors through the website's form through March 28, 2022. Over 12,000 entries were collected, which were provided to the Receiver's claims agent, Stretto, Inc., to provide notice of the proof of claim form and claims bar date. The website also contains a list of "Frequently Asked

Questions" and answers, as well as Status Reports, which are updated as the Receiver and her personnel continue to field inquiries from investors.

- The Receiver located over 20,000 investor related agreements from the Pompano Beach premises, which filled 82 bankers boxes, and 9,233 DocuSign emails to an MJ Capital email address. The Receiver and her counsel have continued to communicate, and provide information and direction to KapilaMukamal, LLP with respect to creating an investor agreement database. Identifying the universe of unique investors, and creating a comprehensive investor list and database of funds received from and paid to investors, is a central part of the Receiver and her forensic accountants' work.

- The Receiver and her personnel have spent a significant amount of time responding to hundreds of investor inquiries received through telephone calls, and the dedicated email address the Receiver established for investors (MJCapital@kttlaw.com). The Receiver and her professionals have received information, and investigated issues, presented by investors relating to the MJ Defendants and its insiders.

- The Receiver and her counsel have continued to investigate the Receivership Entities' operations, including reviewing and analyzing documents and information relating to transactions between the MJ Defendants and other parties, investor related agreements, and investor funds raised.

- The Receiver's counsel has issued multiple letters to, and communicated with, Wells Fargo Bank to obtain missing bank records for the MJ Defendants that are subject to a prior subpoena for production, and coordinated the receipt of additional production from financial institutions.

6

- The Receiver's counsel has reviewed, drafted, and/or revised the following documents and court papers relating to the administration of the receivership estate: (a) the second status update for investors, which was added to the investor webpage, (b) the proposed agreement for employment of Stretto, Inc. as the Receiver's claims agent, (c) the Receiver's Second Motion to Suspend Deadline for Filing Liquidation Plan [DE 120], and (d) the Motion for Supplemental Order for Turnover of Wolters Kluwer and Taxwise Accounts [DE 121].

- The Receiver's counsel has continued to analyze certain alleged tri-party agreements, and communicate with individuals and companies defined as "Sellers" therein as to the veracity of the tri-party agreements.

- The Receiver has been discussing and researching legal issues presented by outside counsel for Microsoft with respect to turnover of the MJ Defendants' email accounts. The discussions are ongoing.

**II. Asset Analysis and Recovery**

The Receiver and her professionals have undertaken an extensive review of all available materials, whether obtained from the business premises or obtained from third parties, including both hard-copy documents as well as electronic information and communications. They have obtained the surrender of assets from numerous individuals and companies, and conducted interviews with several individuals involved in the operation of the MJ Capital Ponzi scheme, and received considerable funds from the Receivership Entities and/or investors. During the Application Period, the results obtained and services rendered include:

- The Receiver and her counsel have recovered $1,093,670.22 in cash from related individuals and companies. The Receiver has worked with multiple cooperative individuals and their title companies to facilitate the sale of real estate located in Broward and Palm Beach

Counties. All net sale proceeds have been provided to the Receiver and are accounted for in the foregoing amount. In addition, the Receiver has obtained the surrender of 3 Rolex watches.

- The Receiver and her counsel have obtained the agreement of Ms. Garcia and MJ Enterprise to turnover all funds frozen in their three bank accounts with JPMorgan Chase Bank, N.A. ("Chase"), which totaled $2,591,200.62 as of February 23, 2022, and on March 8, 2022, filed a motion for turnover of these funds, which is presently pending before the Court.

- The Receiver and her counsel have continued to communicate with attorneys for numerous individuals and companies who were already served with subpoenas regarding producing bank records, surrendering assets, and otherwise cooperating with the Receiver's efforts. During the Application Period, the Receiver and her counsel conducted meetings with, and obtain documents from, over 15 individuals and companies who received considerable funds from the Receivership Entities.

- The Receiver and her professionals continue to review documents received from financial institutions and produced by promoters, and determine additional bank account records to be obtained relating to promoters' involvement with the MJ Capital Ponzi scheme and receipt of investor funds.

- During the Application Period, the Receiver and her counsel issued and served subpoenas on Chase, TD Bank, PNC Bank, and Wells Fargo to obtain bank records for individuals and companies who received substantial funds from the Receivership Entities or funds directly from investors. Two banks have already produced thousands of pages of bank records, and the Receiver anticipates significant additional production from other financial institutions. Additionally, the Receiver and her counsel issued and served additional subpoenas for production on additional board members, promoters and their companies. The Receiver and

8

her professionals' review of commissions and other fees received by promoters is ongoing, and additional subpoenas will be issued. The Receiver and her counsel have continued to review the Receivership Entities and related parties' bank records, nature of transactions, and related information.

- Pursuant to her authority under the Receivership Order, the Receiver continues requesting turnover of all files from attorneys who provided services to the Receivership Entities.

- The Receiver and her counsel attended the mediation with Ms. Garcia and the SEC on February 28, 2022.

- On October 14, 2021, the Court entered an Order Granting Receiver's Motion to Expand Receivership Estate [DE 79] determining that expansion of the receivership to include Pavel Ruiz MJCF LLC and UDM Remodeling, LLC is necessary to effectively safeguard assets for the benefit of investors and to guard against potential dissipation. The companies filed a Motion to Vacate the Court's Order on October 18, 2021 [DE 83], the Receiver filed her Response to Pavel Ruiz MJCF LLC and UDM Remodeling, LLC's Motion to Vacate and Reconsider Order Granting Receiver's Motion to Expand Receivership Estate on October 29, 2021 [DE 95], and the companies filed their reply on November 9, 2021 [DE 98]. On March 21, 2022, the Court entered an Order denying a motion to vacate the Expansion Order [DE 129].

- As of March 31, 2022, the Receiver has recovered $3,203,775.82 in surrendered funds, and the following personal property: (a) 14 One Oz. Gold Bars, (b) 3 T-Mobile SIM Cards, (c) 3 Pre-Paid Visa Cards, (d) Hand & Stone Gift Card, (e) $100 Visa Gift Card and $50 Starbucks Gift Card, (f) Gold Chain, (g) 6 Rolex Watches, 1 Michelle Watch and 1 Gucci Watch, (h) 1 Gucci Backpack, 1 Louis Vuitton Purse, 1 Louis Vuitton Bag and 1 Christian Dior Purse, and (i) 3 rings, and 1 pair of earrings. In addition, an individual has agreed to surrender a

vehicle, which the Receiver will administer upon the entry of an order granting the Receiver's Motion to Expand Employment of Auctioneer and Auction Sale of Vehicles and Surrendered Personal Property [DE 124].

- The Receiver continues to work with counsel to investigate all potential avenues of recovery for the benefit of investors, including from promoters and other parties who received investor funds. Lawsuits against such individuals and entities will be pursued.

### III. Claims Administration and Objections

During the Application Period, the services rendered relating to claims administration and objections include:

- The Receiver and her counsel finalized the terms of a proposed engagement with Stretto, Inc., and on February 1, 2022, the Receiver filed a motion for authority to employ Stretto, Inc. [DE 110]. On February 23, 2022, the Court entered an Order granting the Receiver's motion and her employment of Stretto, Inc.

- The Receiver and her counsel created the proof of claim form, and formulated the proposed submission and administration procedures. On February 21, 2022, the Receiver filed a Motion to (I) Establish Bar Date for Claims; (II) Approve Form and Manner of Notice; (III) Approve Proof of Claim Form; and (IV) Approve Claim Submission and Administration Procedures [DE 113] which included the proof of claim form, proposed notices and procedures, and a proposed order as exhibits. On March 21, 2022, the Court entered an Order granting the motion (the "Claims Procedures Order") [DE 125], setting the claims bar date, and approving the proof of claim form, proposed notice, and proposed submission and administration procedures.

- Following the entry of the foregoing Orders, the Receiver updated the Receiver's investor website (https://kttlaw.com/mjcapital/) with information regarding the proof of claim

form and submission and administration procedures, and links to the notice of bar date, proof of claim form, and the Claims Procedures Order.

- The Receiver and her counsel worked with Stretto, Inc. to plan and implement the claims submission website and platform and create an electronic proof of claim form. In order to provide notice to all potential claimants with claims against the Receivership Entities, the Receiver and her counsel compiled over 20,000 potential claimant addresses for Stretto, Inc. to use when providing notice of the proof of claim form, claims bar date and related matters, including, but not limited to, from: (a) the books and records of the MJ Defendants, (b) public records relating to the Receivership Entities, (c) the accountants' investor agreement database that included all investor names and addresses available in the over 20,000 investor related agreements discussed above, and (d) investor names, addresses and email addresses from the Receiver's investor website, which included over 12,000 entries made by individuals and companies.

- The Receiver and her counsel worked with Stretto, Inc. to establish a prerecorded hotline for investors and other potential claimants to obtain information regarding the claims process: 855-432-7844 (toll free) or 949-236-4769 (international).

### IV. Investigation of Claims Against Third Parties

The Receiver is investigating all parties involved in the fraud including reviewing the MJ Defendants' books and records, and volumes of documents produced by banks, promoters who received subpoenas, and third-party class counsel.

### V. Litigation - Clawbacks

The Receiver and her counsel have conducted research regarding fraudulent transfers and considered potential claims against promoters, and net winner investors.

**KapilaMukamal LLP and Services Rendered**

KapilaMukamal, LLP ("KapilaMukamal") has created an investor agreement database covering the over 20,000 investor related agreements located by the Receiver and counsel. The accountants are performing a multi-step review process to determine the number of unique investors, and differentiate between agreements under which an investor provided new investment funds, reinvested principal from a prior investment, and exited an investment agreement. Identifying the universe of unique investors, and creating a comprehensive investor list and database of funds received from, and paid to, investors by the Receivership Entities and other related parties, is a central part of the Receiver and her forensic accountants' work. No comprehensive investor list or database was located in the books and records of the MJ Companies.

In addition, KapilaMukamal has continued to investigate the Receivership Entities' operations, including reviewing and analyzing documents and information relating to transactions between the MJ Defendants and other parties, investor related agreements, and investor funds raised. The accountants have performed extensive critical analyses to identify funds transferred by the MJ Companies and investors to individuals and companies, which have helped facilitate the surrender or agreement to turnover of assets, such as by the individuals and companies who sold real property and surrender net proceeds to the Receiver, and with respect to Ms. Garcia and MJ Enterprise.

Further, KapilaMukamal has continued to review the Receivership Entities and related parties' bank records, nature of transactions, and related information. The accountants work on the bank reconstruction is ongoing and a significant undertaking. For example, with respect to MJ Capital and MJ Taxes' four bank accounts with Wells Fargo and Chase, during the period of

November 16, 2019 through August 31, 2021, there are more than 90,000 transactions with an estimated 18,000 unique individuals and entities who provided funds to, or received funds from, the MJ Defendants.

KapilaMukamal has also assisted the Receiver in preparing certain required tax forms and filings for the MJ Defendants.

### HD Investigative Group, LLC and Services Rendered

HD Investigative Group, LLC has assisted the Receiver in performing certain investigative work to assist in the Receiver's efforts to identify and secure assets, identifying addresses for subpoena targets, and serving subpoenas for discovery on multiple individuals and companies. Many individuals have attempted to evade service.

### Stretto, Inc. and Services Rendered

Stretto, Inc. ("Stretto") has created a platform and claims submission website (https://case.stretto.com/mjcapital) through which investors and other claimants may obtain information regarding the proof of claim submission process, and use to submit their proofs of claim and supporting documentation electronically. Stretto created an electronic proof of claim form that is available on the website. In addition, Stretto prepared a draft script and recorded a voicemail in English and Spanish that provides information regarding the claims submission process, which can be accessed by calling 855-432-7844 (toll free) or 949-236-4769 (international). Further, Stretto reviewed, formatted and imported potential creditor information from (a) the books and records of the MJ Defendants, (b) public records relating to the Receivership Entities, (c) the accountants' investor agreement database that included all investor names and addresses available in the over 20,000 investor related agreements discussed above, and (d) investor names, addresses and email addresses from the Receiver's investor website,

which included over 12,000 entries made by individuals and companies, and prepared a service matrix consisting of over 20,000 mailing and email addresses for investors and other potential claimants, which it will use to provide notice of the proof of claim form, claims bar date, and related court order.

### Status of the Receivership Accounting

As of March 31, 2022, the receivership estate has cash on hand in the amount of $11,223,559, which the Receiver is holding in the Receiver's trust accounts at IberiaBank and City National Bank. Of this total, the Receiver estimates that $1,056,065 consists of funds deposited into MJ Capital's Chase account on and after August 12, 2021, the date the Receivership Order was entered. The foregoing amount does not include the funds frozen in MJ Defendants' accounts at Wells Fargo Bank. At the time of the banks' responses to the freeze order, $10,500 and $7,618.69 frozen at their accounts at Wells Fargo Bank. The SEC's Standardized Fund Accounting Report (the "SFAR") for the Application Period is attached hereto as **Exhibit A.**

### Request for Fees and Expenses

At Paragraph 53, the Receivership Order provides for reasonable compensation and expense reimbursement to be paid to the Receiver and her retained professionals from the assets held by the Receivership Estate. On August 26, 2021 and September 8, 2021, this Court entered Orders authorizing the Receiver to employ (i) Kozyak Tropin & Throckmorton, LLP as counsel, (ii) KapilaMukamal as forensic accountants, and (iii) HD Investigative Group, LLC as investigators, all retroactive to August 12, 2021, respectively [DE 35, 49]. On February 23, 2022, the Court entered an Order authorizing the Receiver to employ Stretto, Inc. [DE 117].

By this Application, the Receiver is proposing that this Court approve all of the fees and expenses incurred by the Receiver and each of her professionals during the Application Period, and authorize the distribution for payment of: (a) 100% of such expenses, 80% of such fees (with a holdback of 20% of the fees) for the Receiver, Kozyak Tropin & Throckmorton, LLP, KapilaMukamal and Stretto, and (b) 100% of such fees for HD Investigative Group, LLC. The Receiver request that the Court authorize distribution for payment of the 20% holdbacks from prior fee awards for HD Investigative Group, LLC. This is the Receiver's third request for approval of compensation and reimbursement of expenses incurred by the Receiver and each of her professionals. The Receiver proposes that the awarded fees and expenses be paid from the funds currently held in the Receiver's accounts.

As reflected in the attached invoices, the total amount of fees and expenses incurred by the Receiver and each of her professionals[4] during the Application Period (January 1, 2022 through March 31, 2022) is as follows:

  a. The Receiver: The total amount of fees incurred was $16,590.00 (which total includes fees in the amount of $16,590.00 and no expenses. *See* summaries and detailed time entries attached as **Exhibit B** hereto.

  b. Kozyak Tropin & Throckmorton, LLP: The total amount of fees and expenses incurred was $157,833.62 (which total includes fees in the amount of $151,955.00 and expenses in the amount of $5,878.62). *See* summaries and detailed time entries attached as **Exhibit C** hereto.

---

[4] As required by the SEC's Billing Agreement, the Fee Schedule reflecting the names and hourly rates of all of the Receiver's professionals and paraprofessionals are fully set forth in each firm's respective invoices attached hereto as Exhibits B and C. Kozyak Tropin & Throckmorton, LLP has a core group of attorneys primarily responsible for most matters involved in this case, but in certain instances has brought in other attorneys – particularly associates at lower billable rates – to work on discrete tasks where appropriate.

    c. KapilaMukamal, LLP: The total amount of fees and expenses incurred were $198,441.87 (which total includes fees in the amount of $198,181.00 and expenses in the amount of $260.87). *See* summaries and detailed time entries attached as **Exhibit D** hereto.

    d. HD Investigative Group, LLP: The total amount of fees incurred were $5,400.00 (which includes fees in the amount of $5,400.00 and no expenses), plus payment of 20% holdbacks from fees previously awarded in the first and second interim fee applications of $495.00 and $1,805.00, respectively. *See* **Exhibit E** hereto.

    e. Stretto, Inc.: The total amount of fees and expenses incurred were $25,875.60 (which total includes fees in the amount of $25,875.60 and no expenses). *See* **Exhibit F** hereto.

In the case of the Receiver, Kozyak Tropin & Throckmorton, LLP, and KapilaMukamal, LLP, the foregoing totals reflect time charged at reduced hourly rates in accordance with the agreement between the Receiver and the SEC. Specifically, for purposes of this representation, the foregoing firms reduced their partner attorney rates from $675-$800 per hour to $350 per hour, and their associate attorney rates from $450-$550 per hour to $250-$300 per hour. In addition, the Receiver's agreement with Stretto, Inc. includes a discount that is accounted for in the above amounts and Exhibit F.

The services rendered during the Application Period are reflected and described in the attached Exhibits, and the professionals have separated their time into specific Activity Categories as directed by the SEC's Receivership Billing Instructions.

**Memorandum of Law**

The Receiver and her professionals are entitled to reasonable compensation and expenses pursuant to the Receivership Order. A receiver appointed by a court who reasonably and diligently discharges her duties is entitled to be fairly compensated for services rendered and expenses incurred. *See SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation.") A receiver and her lawyers are "also entitled to be reimbursed for the actual and necessary expenses they incurred in the performance of their duties." *Fed. Trade Comm'n v. Direct Benefits Grp.,* LLC, Case NO. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013).

Receivership courts have traditionally determined reasonableness of compensation by using the "lodestar" approach, calculating a reasonably hourly rate in the relevant market and the reasonable number of hours expended. *See, e.g., SEC v. Aquacell Batteries, Inc.*, Case No. 6:07-cv-608-Orl-22DAB, 2008 WL 276026, *3 (M.D. Fla. Jan. 31, 2008); *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). The hourly rates billed by the Receiver and her professionals are reasonable for professionals practicing in the Southern District of Florida, particularly in light of the reduced hourly rates described above, and the services reflected in the attached exhibits were reasonably necessary to the Receiver's performance of her duties as set forth in the Receivership Order.

**CERTIFICATION OF CONFERENCE**

*The Receiver has discussed the relief requested herein with the SEC and is authorized to represent to this Court that, after reviewing the time records and other materials submitted herewith, the SEC does not oppose the relief sought in this Application.*

WHEREFORE, Corali Lopez-Castro, as Receiver, respectfully requests that the Court enter an Order:[5]

(a) approving the total amount of fees and expenses for the Application Period of: (i) the Receiver in the amount of $16,590.00 in fees, (ii) Kozyak, Tropin & Throckmorton, LLP in the amount of $151,955.00 in fees and $5,878.62 in expenses, (iii) KapilaMukamal, LLP in the amount of $198,181.00 in fees and $260.87 in expenses, (iv) HD Investigative Group, LLC in the amount of $5,400.00 in fees, and (v) Stretto, Inc. in the amount of $25,875.60 in fees;

(b) authorizing payment of 80% of the approved fees and 100% of the approved expenses from the assets held by the receivership estate, as set forth herein, for the Receiver, Kozyak, Tropin & Throckmorton, LLP, KapilaMukamal, LLP and Stretto, Inc.;

(c) authorizing payment of the remaining balance of the approved fees (*i.e.*, the 20% holdback) upon final distribution of Receivership assets to investors; and

(d) authorizing the payment of 100% of approved fees from the assets held by the Receivership Estate, as set forth herein for HD Investigative Group, LLC, and payment of the 20% holdbacks from fees previously awarded in the first and second interim fee applications of $495.00 and $1,805.00, respectively.

---

[5] A copy of a proposed order granting the Receiver's Third Interim Application for Order Authorizing Payment of Fees and Expenses is attached hereto as **Exhibit G**.

Dated: May 16, 2022          Respectfully submitted,

         **KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel: (305) 372-1800/Fax: (305) 372-3508
Email: bwidlanski@kttlaw.com
Email: blee@kttlaw.com

By: /s/ Bernice C. Lee
     Benjamin J. Widlanski
     Florida Bar No. 1010644
     Bernice C. Lee
     Florida Bar No. 0073535
     *Counsel for Corali Lopez-Castro, Receiver*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via electronic mail upon all counsel of record on this 16th day of May, 2022.

By: /s/ Bernice C. Lee
     Bernice C. Lee

## **CERTIFICATION**

The undersigned certifies that:

(a) I have read this application ("Application");

(b) to the best of my knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions;

(c) all fees contained in the Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

(d) I have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission);

(e) in seeking reimbursement for a service which I justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), I request reimbursement only for the amount billed to me by the third party vendor and paid by me to such vendor. To the extent that such services were performed by me as Receiver, I certify that I am not making a profit as Receiver on such reimbursable service.

(f) With the exception of the Billing Instructions, I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estates, or any sharing thereof.

Respectfully submitted and certified,

*s/ Corali Lopez-Castro*
Corali Lopez-Castro, as Receiver


Respectfully submitted this 16th day of May 2022.