UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-61644-CIV-SINGHAL

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

MJ CAPITAL FUNDING, LLC,
MJ TAXES AND MORE, INC., and
JOHANNA M. GARCIA,

    Defendants.
_____/

### RECEIVER'S MOTION TO APPROVE SETTLEMENT AGREEMENT WITH INVESTOR CLASS REPRESENTATIVES AND WELLS FARGO BANK, N.A. AND FOR RELATED RELIEF

Corali Lopez-Castro, as the Court-appointed Receiver ("Receiver") over MJ Capital Funding, LLC ("MJ Capital"), MJ Taxes and More, Inc. (together, the "MJ Defendants"), Pavel Ruiz MJCF LLC and UDM Remodeling, LLC (each, a "Receivership Entity" and collectively, the "Receivership Entities"), hereby moves for entry of an Order approving the Settlement Agreement entered into between the Receiver, and Gilmer Bautista, Gilmer's Enterprise LLC, Juan Mendoza, Alejandro Diaz and Tyler Witter (the "Class Representatives") on one hand, and Wells Fargo Bank, N.A. ("Wells Fargo"), on the other hand, a copy of which is attached hereto as **Exhibit 1** (the "Settlement Agreement"). The Class Representatives and Wells Fargo are referred to herein together as the "Parties," and the Parties and the Receiver are referred to herein collectively as the "Global Parties."

1

## INTRODUCTION

Wells Fargo has agreed to fund $26.625 million under the terms of the Settlement Agreement. The Receiver estimates the fund will provide over $19.5 million in distributions to victim investors. If approved, the Receiver, as the Settlement Administrator, will disburse these funds to victim investors through the claims process that the Court has already approved in this action, and the Receiver has already implemented. Further, investors who did not previously timely submit a proof of claim to the Receiver will be provided with additional time to file a claim form to seek distribution from the settlement proceeds. This settlement was reached without the Receiver having to initiate a lawsuit against Wells Fargo, and with respect to the investor class action, before the Parties conducted discovery and before the Court ruled on the merits of Wells Fargo's motion to dismiss.

## BACKGROUND

**A. The SEC Receivership and Claims Process.**

1. On August 9, 2021, the Securities and Exchange Commission ("SEC") filed a complaint [DE 1] against the MJ Defendants and Johanna M. Garcia ("Garcia") thereby initiating the above referenced case (the "SEC Action"), and later filed an amended complaint [DE 130].

2. On August 12, 2021, the Court entered the Order appointing the Receiver over the MJ Defendants (the "Receivership Order") [DE 17], and on October 14, 2021, the Court expanded the receivership to include two additional companies (the "Expansion Order") [DE 79]. The Receivership Order authorizes and directs the Receiver to *inter alia* investigate, prosecute, and compromise actions to recover the Receivership Entities' claims, rights and other assets. *See* Receivership Order, ¶ 7.

3. Johanna Garcia, Pavel Ruiz ("Ruiz"), other board members, owners, account

representatives, managers, team leaders and other promoters, including their affiliates and subsidiaries, perpetuated an investment scheme through the use of the Receivership Entities (the "MJ Capital Scheme"). As described in the Receiver's quarterly reports, the Receiver estimates that over 400 promoters induced thousands of investors to invest an estimated $200 million dollars in the MJ Capital Scheme. They falsely represented that money would be used for, and 120% to 180% annual returns would be paid from the proceeds of, Merchant Cash Advance ("MCA") transactions.  In reality, very little money was used for MCA transactions, and instead, funds were used to pay alleged "returns" to investors, "commissions" and "referral fees" to promoters, and for the benefit of insiders and promoters.

4. The Receiver has recovered over $14 million dollars for the receivership estate, and implemented a claims process for claimants to file proofs of claim for distribution from the receivership estate.  The Court approved the claims process and entered an Order Granting Receiver's Motion to (I) Establish Bar Date for Claims; (II) Approve Form and Manner of Notice; (III) Approve Proof of Claim Form; and (IV) Approve Claim Submission and Administration Procedures [Doc. 125] (the "Receiver's Claim Process Order") on March 21, 2022, which set the claims bar date as July 19, 2022 (the "Receiver's Bar Date").

**B. The Class Representatives' Lawsuit Against Wells Fargo.**

5. On August 20, 2021, the Class Representatives filed a class action against Wells Fargo initiating Case No. 21-61749-AHS (the "Investor Action") pending before this Court. On December 13, 2021, they filed an amended complaint asserting counts for aiding and abetting fraud, aiding and abetting breach of fiduciary duty, unjust enrichment, and negligence.

6. On January 1, 2022, Wells Fargo filed a motion to dismiss.  On February 22, 2022, the Court granted a stay of discovery, and upon the Parties' joint motion, on May 13, 2022, the

Court denied the motion to dismiss without prejudice and stayed the case through September 2, 2022. Upon the Parties' requests, the Court has entered orders extending the stay.

### C. The Receiver's Investigations and Global Mediation.

7. The Receiver and her professionals conducted an extensive review of documents and information in connection with claims against Wells Fargo. Bank records show that Garcia, Ruiz and other promoters used the MJ Defendants' bank accounts to operate the MJ Capital Scheme. The Receiver spent a considerable amount of time investigating and reviewing: (a) over $155 million in transactions occurring within the Wells Fargo Accounts, (b) relationships between the MJ Defendants, certain promoters and investors, and Wells Fargo, (c) Garcia and other promoters' use of accounts with Wells Fargo and certain banking activity, and (d) the investor loss with respect to claims against Wells Fargo.

8. In May 2022, the Class Representatives and Wells Fargo participated in mediation with mediator Hunter R. Hughes III. During this initial process, the Class Representatives kept the Receiver apprised of developments in their case, and the Receiver worked with the Class Representatives to provide information and records to support their claims.

9. Soon after, the Receiver joined the Parties' settlement discussions, and on August 26, 2022, the Receiver, Class Representatives and Wells Fargo attended a follow-on mediation with the mediator, and continued to negotiate unresolved terms of a global settlement.

### D. The Settlement Agreement Between the Global Parties.

10. Following extensive good faith negotiations and in order to fully and finally resolve their disputes, avoid litigation, expense and delay, and settle claims in connection with the MJ Capital Scheme, the Global Parties reached a compromise and settlement as set forth in the Settlement Agreement, which is subject to the Court's approval in this case and in the Investor

Action.

11. While certain pertinent terms of the Settlement Agreement are described below, the entire Settlement Agreement is attached hereto as Exhibit 1 and should be reviewed. In the event there is a discrepancy between the summary of terms below and the terms set forth in the Settlement Agreement, the Settlement Agreement controls.

12. The Settlement Agreement provides that the Receiver will be appointed as the Settlement Administrator, and will provide notice to the Settlement Class Members, review and approve claims, and determine and provide distributions to victim investors as described in the Settlement Agreement. *See* Agrmt. § 1.35.

13. Under the Settlement, Wells Fargo will pay $26.625 million (the "Wells Fargo Fund") to resolve the Receiver's claims that relate to the MJ Capital Scheme (defined as the "Receiver's Released Claims"[1] in the Settlement Agreement) against Wells Fargo and various related parties (defined as the "Released Parties" in the Settlement Agreement), and the claims of the Settlement Class Members who do not timely opt out and related parties that relate to the MJ Capital Scheme against the Released Parties. *See* §§ 4.1 and 10.

14. The Receiver estimates that more than $19.5 million will be disbursed to victim investors who have allowed claims as described in greater detail below. Other amounts to be paid from the $26.625 million include: (a) Notice and Administration Expenses and Taxes required under the Settlement Agreement, (b) attorneys' fees and reimbursement of costs for the attorneys representing the Class Representatives in the Investor Action, for which the Class Representatives will seek court approval in the Investor Action and which the attorneys have agreed will not exceed

---

[1] Capitalized terms not defined herein shall have the definitions provided for in the Settlement Agreement.

24.88% ($6,625,000), (c) service awards in the amount of $3,000 each for the individual Class Representatives, if approved by the Court in the Investor Action, and (d) other costs, fees or expenses approved by the Court. See § 1.18.

15.     Under the Settlement Agreement, Wells Fargo will provide the $26.625 million consideration as follows: (a) within 30 days of entry of the Preliminary Approval Order, Wells Fargo will fund $250,000 into the Escrow Account with the Settlement Administrator to cover initial costs and expenses for implementing the Settlement, (b) within 20 days after the entry of the Final Order and Judgment, regardless of appeal, Wells Fargo will fund $26,375,000 into the Preliminary Escrow Account, and (c) within 2 days of the Effective Date, the Global Parties will jointly grant permission to the administrator for the Preliminary Escrow Account to transfer all funds including interest in the Preliminary Escrow Account to the Escrow Account. See § 4.1.

16.     The Settlement Agreement takes into account that the Receiver has already implemented a claims process as approved by the Court in the Receiver's Claims Process Order which set the Receiver's Bar Date as July 19, 2022. See § 7.4. The Settlement Administrator will provide notice of the Settlement Agreement to Class Members to whom the Receiver previously provided notice of the Receiver's Claims Process Order, and any additional investors the Receiver has subsequently identified (collectively, the "Investors"). See § 7.3.1.

17.     Investors who previously returned a proof of claim form to the Receiver by the Receiver's Bar Date will not be required to submit any additional form in order to seek distribution from the Wells Fargo Fund, though they will be advised of their right to opt out of the settlement or object. The Receiver is in the process of reviewing all timely filed proofs of claim under the Receiver's Claim Process, which provides for a reconsideration and appeal process in the event the Receiver rejects all or part of a proof of claim. See § 7.4.

18.     Investors who chose not to, or otherwise failed to, timely return a proof of claim form to the Receiver by the Receiver's Bar Date under the Receiver's Claim Process Order, may submit a Claim Form to the Settlement Administrator within 60 days after the Settlement Administrator sends the Notice to seek to establish their eligibility, and indicate their intention to participate in the Wells Fargo Fund (the "Additional Claimants"). *See id*. If the Settlement Administrator rejects part or all of a Claim Form, the Settlement Agreement proposes that the same reconsideration and appeal process will apply to Additional Claimants; provided that, appeal will be taken in the Investor Action rather than this action. *See id*.

19.     The Settlement Administrator will oversee and determine the allowance of claim amounts, and the calculation of the Distributions of the Net Consideration to Investors entitled to receive such Distributions. *See id*. To determine the amount of Distributions, the Settlement Administrator will apply the same factors as the Receiver, and consider and review: (a) the proofs of claim and supporting documentation (such as copies of personal checks, cashier's checks, wire transfer advices, cash receipts, and other documents evidencing investment of funds, and copies of each signed investment contract) that Settlement Class Members previously submitted by the Receiver's Bar Date and/or that each Settlement Class Member who is an Additional Claimant timely submits; (b) total monetary amounts claimed by Settlement Class Members and the validity of those amounts based on bank reconstructions, investor contracts, and other information to the extent available; (c) total monetary amounts paid or returned to Settlement Class Members, whether in the form of interest payments, return of capital or other payments, and the validity of those payments or returns based on bank reconstructions, investor contracts and other information to the extent available; (d) the Settlement Class Member's role, if any, as a board member, officer, director, owner, manager, team leader, account representative or other insider of any Receivership

Entities or affiliate; and (e) any knowing assistance given by the Settlement Class Member to any Receivership Entities or affiliate to effectuate, perpetuate or promote the MJ Capital Scheme, or knowledge of the fraudulent nature of the MJ Capital Scheme at the time funds were transferred to, or a debt was incurred by, such Settlement Class Member. *See id*. Based on such considerations, the Settlement Administrator will determine a net cash amount based on total monetary amounts invested less total monetary amounts paid or returned, and apply a distribution methodology. *See id*.

## LEGAL ARGUMENT

20. "A district court reviews settlements proposed by receivers for fairness, reasonableness, and adequacy." *Sec. & Exch. Comm'n v. 1 Glob. Cap. LLC*, No. 18-CV-61991, 2018 WL 8050527, at *2 (S.D. Fla. Dec. 27, 2018); *see Sterling v. Stewart*, 158 F.3d 1199, 1201 (11th Cir. 1998) (approving settlement because managing receiver acted in good faith and conducted adequate investigation and settlement was fair); *Sec. & Exch. Comm'n v. Quiros*, No. 16-CV-21301, 2016 WL 9254719, at *2 (S.D. Fla. Oct. 18, 2016) (approving settlement as fair, adequate and reasonable, and well within the range of reasonableness). "Determining fairness is left to the sound discretion of the district court." *Sec. & Exch. Comm'n v. 1 Glob. Cap. LLC*, 2018 WL 8050527, at *2 (citing Sterling, 1158 F. 3d at 1202).

21. The Receiver believes that the Settlement Agreement is in the best interests of the receivership estate and victim investors, and is well within the range of reasonableness. The settlement was reached without the Receiver incurring the expenses of filing and prosecuting a lawsuit against Wells Fargo, and will result in an immediate and substantial recovery for victim investors.

22. Wells Fargo has agreed to pay $26.625 million, and the Receiver estimates that

more than $19.5 million will be distributed to victim investors under the claims review and distribution process described in the Settlement Agreement. The Receiver will serve as the Settlement Administration and review all claims to safeguard victim investors and prevent those who profited from the MJ Capital Scheme from recovering from the Wells Fargo Fund.

23. The Settlement Administrator will apply and incorporate the claims review process that the Court has already approved in this action, and is well underway. Investors who previously filed a timely proof of claim with the Receiver will not be required to submit an additional claim to seek a distribution from the Wells Fargo Fund, and Investors who did not timely file proofs of claim will have a 60 day period to submit claim forms to the Settlement Administrator to seek a distribution from the Wells Fargo Fund.

24. While the investor loss is significant, the claims the Receiver could bring against Wells Fargo involve disputed legal and factual issues that would require substantial time and expense to litigate, and there is significant uncertainty as to the outcome of the litigation and any appeals. For example, in Florida, a claim for aiding and abetting against a bank requires a plaintiff plead facts demonstrating "actual knowledge" of the wrongdoings, which is difficult to plead and prove. *See Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014). "Moreover, Florida does not require banking institutions that conduct routine banking services to investigate transactions involving its demand deposit accounts; therefore, merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive Twombly." *See id*. If the Receiver and Class Representative's claims are unsuccessful, victim investors would recover nothing instead of the anticipated $19.5 million in distributions.

25. Litigation of claims against Wells Fargo could easily cost the receivership in excess

of $1,000,000, and provides no guarantee of recovery or the substantial benefit that the victim investors will receive under the Settlement Agreement.

26. The Receiver believes that the proposed settlement constitutes a fair valuation of potential liability given applicable claims, defenses, and risks.

27. As a result of the Global Parties' efforts, and good-faith approach to resolving matters, the Global Parties were able to reach an agreement before the Receiver filed any action, and in the Investor Case, before the Court ruled on the merits of the Wells Fargo's motion to dismiss and Class Representatives engaged in discovery.

28. The Settlement Agreement does not include a receivership bar order, but is a class settlement, which if approved, would provide for a release in favor of Wells Fargo and related parties by all Participating Settlement Class Members, and requires adequate notice to Class Members. The Class Representatives filed a Motion for Preliminary Approval of Settlement Agreement, Confirmation of Class, Approval of Class Notice and Scheduling of Fairness Hearing, and Incorporated Memorandum of Law on December 23, 2022 in the Investor Action, which *inter alia* seeks approval of the proposed notice.

29. The Settlement Administrator will be able to use existing service lists to provide notice to Settlement Class Members. In this action, the Receiver compiled a service list of investors' emails and addresses by reviewing over 24,000 investor related agreement located on the MJ Capital premises in Pompano Beach, Florida and in MJ Capital emails, and over 12,000 submissions made by investors on the Receiver's website. The Receiver used this service list to provide notice to investors of the proof of claim form and Receiver's Claims Bar Date, and provided publication notice in The Miami Times, The Palm Beach Post, and The Sun Sentinel. In response, approximately 12,950 timely proofs of claim were filed, and the Receiver has a service

list with all emails and addresses stated in the proofs of claim. The Settlement Administrator will have the benefit of these service lists when providing notice of the Settlement Agreement to the Settlement Class Members.

**WHEREFORE**, the Receiver respectfully requests that the Court: (a) enter an order granting the Motion substantially in the same form as the proposed order attached hereto as **Exhibit 2**, (b) approving the Settlement Agreement, (c) approving the Receiver serving as the Settlement Administrator under the Settlement Agreement and authorizing her to take all reasonable steps to comply with the terms of the Settlement Agreement, including, but not limited to, engaging professionals and service providers to assist with her duties, providing the Distributions as described in the Settlement Agreement, and incurring and paying Notice and Administration Expenses and Taxes with funds from the Wells Fargo Fund without the need for further court approval, (d) approving the procedure described herein to allow Additional Claimants to submit Claim Forms to the Settlement Administrator; and (e) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel: (305) 372-1800/Fax: (305) 372-3508
Email: bwidlanski@kttlaw.com
Email: dlr@kttlaw.com
Email: blee@kttlaw.com

By: /s/ *Bernice C. Lee*
      Benjamin J. Widlanski, Esq.
      Florida Bar No. 1010644
      Bernice C. Lee
      Florida Bar No. 0073535

*Counsel for Corali Lopez-Castro, Receiver*

## CERTIFICATION OF CONFERENCE WITH COUNSEL

The undersigned counsel for the Receiver certifies that she has conferred with counsel for the SEC, and certifies that the SEC has no objection to the relief sought in the Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 30, 2022, I electronically filed the foregoing document with the clerk of the Court using CM/ECF, and the foregoing document is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ *Bernice C. Lee*
Bernice C. Lee