# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-61644-CIV-SINGHAL

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

MJ CAPITAL FUNDING, LLC,
MJ TAXES AND MORE, INC., and
JOHANNA M. GARCIA,

      Defendants.
_____/

**SETTLEMENT AGREEMENT**

      This Settlement Agreement (the "Agreement") is made this 30th day of January 2026 by and between Bernice Lee, solely in her capacity as the successor receiver (the "Receiver") over MJ Capital Funding, LLC ("MJ Capital"), MJ Taxes and More Inc., Pavel Ruiz MJCF LLC and UDM Remodeling, LLC (collectively the "Receivership Entities") appointed by the United States District Court for the Southern District of Florida (the "Court") in the above-referenced case, on the one hand, and Raed Khan, Ascension Capital Group, LLC, Khan1, LLC, Khan2, LLC, Khan3, LLC and Khan4, LLC (collectively, the "Khan Parties"), on the other hand. The Receiver, Raed Khan, Ascension Capital Group, LLC, Khan1, LLC, Khan2, LLC, Khan3, LLC and Khan4, LLC may each be referred to as a "Party" and may together be referred to as the "Parties."

      WHEREAS, on August 9, 2021, the Securities and Exchange Commission ("SEC") filed a complaint [DE 1] against MJ Capital and MJ Taxes and More Inc. (the "MJ Defendants") and Johanna M. Garcia ("Garcia"), and later filed an amended complaint [DE 130], which alleges that Garcia used the MJ Defendants to perpetrate a Ponzi scheme by which investors were tricked into thinking they were funding merchant cash advance loans to small businesses when in reality their "returns" have been funded with money obtained from new investors;

      WHEREAS, the Court entered the Order appointing a receiver over the MJ Defendants [ECF 17] on August 12, 2021 and the Order appointing the successor receiver on May 22, 2023, and the Order Granting Receiver's Motion to Expand Receivership Estate [DE 79] on October 14, 2021, which orders direct the Receiver to, among other things, sue for and collect all property interest of the Receivership Entities, and seek the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from the Court as may be necessary to enforce the orders;

WHEREAS, the Receiver is the Settlement Administrator for the Wells Fargo settlement fund (the "Wells Fargo Settlement Fund") established under the settlement agreement with Wells Fargo Bank approved by the Court in the [DE 190];

WHEREAS, the Receiver has asserted that, according to the Receivership Entities' records, the Receivership Entities transferred an aggregate amount of $1,343,000 to or for the benefit of the Khan Parties (and this amount takes into account $30,000 in funds seized by the FBI), which transfers the Receiver believes are avoidable as fraudulent transfers and recoverable under applicable law, including but not limited to, § 726.105(1)(a), § 726.105(1)(b), § 726.106(1), § 726-108 of the Florida Statutes (collectively, the "Fraudulent Transfers");

WHEREAS, on August 8, 2025, the Receiver filed a lawsuit, Case No. 25-61605 in the United States District Court for the Southern District of Florida against the Khan Parties seeking the avoidance and recovery of fraudulent transfers totaling $1,343,000, including the Fraudulent Transfers made to or for the benefit of the Khan Parties (the "Recovery Action");

WHEREAS, the Khan Parties have provided several documents and information to the Receiver, including, but not limited to, the Affidavit of Raed Khan Regarding Net Worth Statement, the Investment Repurchase Agreement dated January 13, 2026 and other documents relating to Raed Khan's investment in Chaos Capital LLC, tax returns for 2022, 2023 and 2024, anticipated tax liability for 2021, records and information relating to accounts with Voyager, Robinhood and Coinbase, bank statements for accounts with Bank of Texas, Bank of America, JPMorgan Chase, BB&T, Wells Fargo Bank, spreadsheets with additional information regarding the use of funds received from the MJ Defendants; and

WHEREAS, based on the records and information, disclosures and attestations provided by the Khan Parties, and following good faith negotiations and in order to fully and finally resolve their disputes, avoid litigation, expense and delay, and settle all claims and causes of action in connection with the Fraudulent Transfers by and between the Parties, the Parties have reached a compromise and settlement of the Fraudulent Transfers as set forth in the Agreement.

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and without admitting any wrongdoing or liability, the Parties stipulate and agree as follows:

1. <u>Recitals Incorporated</u>.  The recitals and prefatory phrases and paragraphs set forth above are incorporated in full and made a part of the Agreement.

2. <u>Settlement Amount/Payment</u>. The Khan Parties shall pay a total of at least $200,000 (the "Settlement Amount") to the Receiver as follows: (a) $120,000 immediately upon signing this Agreement, (b) $80,000 to be paid on or before March 31, 2026, and (c) all payments due to the Receiver under paragraph 3 below (together, the "Settlement Payments"). The Settlement Payments will be wired to the Receiver. In the event the $80,000 to be paid by Chaos Capital LLC (discussed below) is paid before March 31, 2026, such funds will be immediately wired to the Receiver. In the event the $80,000 to be paid by Chaos Capital LLC is not paid by March 31, 2026,

the Khan Parties will have until May 30, 2026 to pay the $80,000 referenced in subsection (b) of this paragraph.

3. <u>Chaos Capital Shares</u>. Raed Khan used $405,000 in funds received from the Receivership Entities to purchase shares in Chaos Capital LLC (the "Chaos Capital Shares"), and under an Investment Repurchase Agreement dated January 13, 2026 between Raed Khan and Chaos Capital LLC, Chaos Capital LLC will pay $80,000 to repurchase the Chaos Capital Shares no later than March 31, 2026. The Khan Parties agree that any and all payments related to the Chaos Capital Shares and/or from Chaos Capital LLC will be transferred directly to the Khan Parties' counsel, Alejandro Soto, Fridman Fels & Soto, PLLC, and immediately provided to the Receiver via wire.

4. <u>Financial Disclosure</u>. The Khan Parties have provided the Receiver with the Affidavit of Raed Khan Regarding Net Worth Statement in which they represent that the Khan Parties' current assets consist of only: (a) less than $12,000 in bank accounts, and (b) the Chaos Capital Shares, and the Khan Parties have no other assets, either held directly or indirectly by a third party. In the event the Receiver discovers an asset of Raed Khan and/or any of the Khan Parties that was not included in the Affidavit of Raed Khan Regarding Net Worth Statement, Raed Khan and/or any of the Khan Parties, as applicable, shall surrender such asset to the Receiver upon notice to counsel for the Khan Parties, Alejandro Soto via email to asoto@ffslawfirm.com, and Raed Khan and/or any of the Khan Parties will not oppose any motion or other appropriate pleading filed by the Receiver seeking the surrender and turnover of such asset.

5. <u>Warranties and Representations</u>. The Khan Parties hereby warrant and represent as follows: (a) the Khan Parties received $1,373,000 from the Receivership Entitles, and did not receive any other funds or items of value, directly or indirectly, from the Receivership Entities including from other insiders, investors or promoters of the Receivership Entities; (b) Raed Khan individually invested $70,000 with the MJ Defendants using funds that were not received from the Receivership Entities; (c) Raed Khan used $405,000 in funds received from the Receivership Entities to purchase the Chaos Capital Shares; (d) the Khan Parties' current assets consist of only less than $12,000 in bank accounts and the Chaos Capital Shares, and the Khan Parties have no other assets, either held directly or indirectly by a third party; (e) the Khan Parties will receive $120,000 from family members to make the first Settlement Payment; (f) the Khan Parties have received no distributions or other payments on account of the Chaos Capital Shares, and other than Chaos Capital LLC's repurchase of the Chaos Capital Shares, the Khan Parties will not receive any distributions or other payments related to the Chaos Capital Shares and/or from Chaos Capital LLC, and after the repurchase, the Khan Parties shall have no interest in, and/or any right to receive any payments from, Chaos Capital LLC; (g) the Khan Parties have received no payments of any kind or items of value from Chaos Capital LLC, Eric Suedhoff or any other related party or affiliate (except for one payment for $2,000 provided by Chaos Capital LLC to Raed Khan on July 19, 2025 for shared personal entertainment expenses between Raed Khan and Eric Suedhoff); (h) Chaos Capital LLC operated at a loss and had negative net income during 2021 through 2024, and in 2025, generated net income of $171,000; (i) Raed Khan's gross income for 2022 was less than $19,000 as reflected in his 2022 tax return, Raed Khan's gross income for 2023 was less than $14,000 as reflected in his 2023 tax return, and Raed Khan and his spouse's combined gross

income for 2024 was $135,795 as reflected in their joint 2024 tax return; (j) Raed Khan's current tax liability for 2021 exceeds $400,000; (k) the Affidavit of Raed Khan Regarding Net Worth Statement and exhibits attached thereto, Investment Repurchase Agreement dated January 13, 2026, tax returns for 2022, 2023 and 2024, bank records, tax returns, spreadsheets, and all other documents and information provided by the Khan Parties to the Receiver, are true, correct and accurate; and (l) the Khan Parties have not filed any claims with the Receiver or Settlement Administrator.

6.  **Court Approval**. Pursuant to the Court's Order Granting Receiver's Motion to Approve Third-Party Litigation Procedures and Contingency Fee Arrangement [DE 193], the Receiver is required to obtain an Order by the presiding Court approving the Agreement, and the Receiver is permitted to receive settlement funds upon the settling party's execution of the settlement agreement and hold such funds pending Court approval. Should the Court not approve the Agreement, any settlement payments under the Agreement shall continue to be held by the Receiver pending Court approval of an increased settlement agreement between the Parties or, in the absence of further settlement agreement between the Parties, then pending further Court order.

7.  **Confidentiality**. The Khan Parties shall maintain the confidentiality of the terms of the Agreement, and shall not disclose the terms of the Agreement to any individual or entity, other than necessary legal and accounting professionals and documents, without the written consent of the Receiver.

8.  **Mutual Releases**.

    a.  Effective upon the Receiver's timely receipt of the Settlement Amount and all Settlement Payments from the Khan Parties under the Agreement, and the Court's entry of a final non-appealable order approving the Agreement, and provided there is no breach by the Khan Parties of the Agreement, including without limitation the warranties and representations set forth herein, the Receiver and the receivership estate hereby waive any and all claims, counterclaims, rights, demands, costs, damages, losses, liabilities, attorney fees, actions and causes of action, either asserted or unasserted, which exist, or may exist, against the Khan Parties with respect to the Fraudulent Transfers, and the Receiver will seek to dismiss the Recovery Action, or the parties will submit a stipulation of dismissal as appropriate. This release addresses the claims of the Receiver and receivership estate only, and is limited to the Fraudulent Transfers.

    b.  Effective upon the Court's entry of a final non-appealable order approving the Agreement, the Khan Parties hereby waive any and all claims, counterclaims, rights, demands, costs, damages, losses, liabilities, attorney fees, actions and causes of action, either asserted or unasserted, which exist, or may exist, against the Receiver and the receivership estate, and their professionals, agents, representatives, attorneys, assigns and successors in interest, including, but not limited to, any distributions from the receivership or Wells Fargo Settlement Fund.

9. <u>Default Remedies and Enforcement</u>. In the event the Khan Parties fail to timely pay the Settlement Amount or any of the Settlement Payments, in whole or in part, or otherwise fail to comply with the terms of the Agreement, including any breach of the warranties and representations by the Khan Parties, the Receiver is entitled to the entry of a joint and several final judgment against the Khan Parties in the amount of $1,343,000 less any amount of the Settlement Amount timely paid by the Khan Parties to the Receiver under the Agreement (if any), plus post-judgment interest on the entire amount at the applicable rate upon entry of the final judgment, which will be entered in the above-referenced case, the Recovery Action, or another case initiated by the Receiver, and the Receiver shall be entitled to reasonable attorneys' fees, costs and expenses incurred in taking action to enforce the Agreement and final judgment. The Khan Parties may object to the entry of the final judgment only on the basis that the Settlement Amount payment was timely made and not accounted for by the Receiver, and otherwise agree to the entry of the final judgment upon the Receiver filing a motion for the entry of such final judgment. All other objections or opposition to the entry of the final judgment are waived.

10. <u>Attorneys' Fees and Costs</u>. Except as otherwise set forth herein or the final judgment or any amended final judgment described herein, each Party shall be responsible for and bear all of its own costs and expenses incurred at any time in connection with the above-referenced case, and the negotiation, execution and performance of the Agreement; provided, however, the Receiver shall be entitled to recover reasonable attorney's fees, costs and expenses to enforce the terms of the Agreement.

11. <u>Binding Effect</u>. The Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

12. <u>Assignment</u>. The Receiver shall have the absolute right to sell, assign and convey the rights under the Agreement, the final judgment, and any amended final judgment, as she deems appropriate.

13. <u>Entire Agreement</u>. The Agreement constitutes the entire agreement of the Parties hereto as to the subject matter hereof. The undersigned acknowledge that there are no communications or oral understandings contrary, different, or that in any way restrict the Agreement, and that all prior agreements or understandings within the scope of the subject matter of the Agreement are superseded, null and void.

14. <u>Severability</u>.  If any provision of the Agreement shall be held invalid or unenforceable, the validity, legality or enforceability of the other provisions of the Agreement shall not be affected, and the Parties shall use best forth efforts to remedy any invalid or unenforceable provisions by substituting a valid and enforceable provision as similar as possible to the provision at issue.

15. <u>Waiver, Modification and Amendment</u>. No waiver, modification or amendment of the terms and conditions of the Agreement shall be valid and binding unless made in writing, signed by the Party to be charged and then only to the extent as set forth in such written waiver, modification or amendment.

16.     <u>Counterparts and Electronic Transmission</u>.  The Agreement may be executed in one or more counterparts and the Parties may transmit the executed Agreement to each other electronically, each of which will be deemed to be an original and all of which, when taken together, will be deemed to constitute one and the same agreement.

17.     <u>Authority to Act</u>.  The persons executing the Agreement on behalf of the Parties represent and warrant that they have the full authority and power to enter into the Agreement and compromise the disputes described herein, and sign on behalf of the party for whom they are signing and that their signature on the Agreement shall be binding on such party.

18.     <u>No Reliance</u>.  The Parties each represent and warrant that in entering into the Agreement they are relying on their own judgment, belief and knowledge and, as applicable, on that of any attorney they have retained to represent them in this matter.  In entering into the Agreement, no Party is relying on any representation or statement made by any other Party or any person representing such other Party.

19.     <u>Neutral Interpretation</u>.  In the event any dispute arises among the Parties with regard to the interpretation of any term of the Agreement, the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

20.     <u>Consultation with Counsel</u>.  The Parties each acknowledge that they have consulted with counsel and with such other experts and advisors as they have deemed necessary in connection with the negotiation, execution and delivery of the Agreement, or have had an opportunity to so consult and have knowingly chosen not to do so.

21.     <u>Acknowledgement</u>.  The Agreement was executed after good faith arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that the Agreement provides a fair and reasonable resolution of the claims and disputes between the Parties.

22.     <u>Applicable Law</u>. The Agreement shall be governed by and construed in accordance with the law and rules applicable in the United States District Court for the Southern District of Florida.  Where state law controls, the Agreement shall be governed by the substantive law of the State of Florida, without regard to its choice of law rules.

23.     <u>Jurisdiction</u>.  The Court shall retain sole and exclusive personal and subject matter jurisdiction over the Parties and the subject matter, interpretation, effectuation, and enforcement of the terms of the Agreement, the final judgment, and any amended consent final judgment.  In any action between or among the Parties hereto arising out of or relating to the Agreement, the final judgment or amended consent final judgment, including with respect to enforcement, each Party irrevocably and unconditionally consents and submits to the exclusive jurisdiction of the Court venue for any such proceedings being exclusively in the Court.  The Parties hereby waive the right to trial by jury with respect to any disputes arising out of or in any way relating to the

Agreement, final judgment and amended consent final judgment with respect to all issues so triable.

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused the Agreement to be executed on the dates shown below:

_____
Raed Khan, individually and as the principal and manager of
Ascension Capital Group, LLC, Khan1, LLC, Khan2, LLC,
Khan3, LLC and Khan4, LLC

1/30/26
_____
Date

_____
Bernice Lee, solely in her capacity
as Receiver for the Receivership Entities

_____
Date

7